UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RAMON GALEAS,

                Plaintiff,                             **REPORT AND**
                                                                 **RECOMMENDATION**

              -against-                              19-CV-4270 (PKC)

**HOUSLANGER & ASSOCS, PLLC, et al.,**

                **Defendants.**
------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Currently pending before this Court, on a referral from the Honorable Pamela K. Chen, is a motion pursuant to Rule 25(a) of the Federal Rules of Civil Procedure (the "FRCP"), to substitute Mr. Carlos Villalba ("Mr. Villalba") as representative of the Estate of Ramon Galeas (the "Estate"), as the party in interest following the death of the sole plaintiff, Ramon Galeas ("Mr. Galeas," "plaintiff," or the "decedent"). See Notice of Motion to Substitute Party (Mar. 2, 2020) ("Substitution Mot."), Electronic Case Filing ("ECF") Docket Entry ("DE") #55. Defendants object to the substitution motion; in the alternative, citing Local Civil Rule 54.2 of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule"), defendants seek an order directing the movant to provide security for costs to which defendants may be entitled if the substitute plaintiff receives a judgment less favorable than defendants' previously rejected offer of judgment, and for fees to which defendants may be entitled for sanctionable conduct. See Houslanger Defendants' Memorandum in Opposition (Apr. 2, 2021) ("Houslanger Opp.") at 4-7, DE #61; Virgo's Memorandum in Opposition (Apr. 2, 2021) ("Virgo Opp.") at 1-3, DE #62. For the reasons that follow, this Court recommends that the substitution motion be granted, without prejudice to defendants' pending dispositive motion

and to their challenges to the survivability of Mr. Galeas's claims; the Court further recommends that defendants' application for a bond be denied.

## BACKGROUND

Some familiarity with the case is assumed. In brief, Mr. Galeas commenced this action against defendants Houslanger & Associates, PLLC and Todd Houslanger, Esq. (collectively, the "Houslanger defendants"), as well as Virgo Capital LLC ("Virgo"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and New York State law, related to defendants' attempts to collect on an allegedly fraudulently obtained 2007 default judgment that was ultimately vacated. See Complaint (July 24, 2019) at 1, 30-35, DE #1[1]; see also Amended Complaint (Nov. 20, 2019), DE #22; Houslanger Opp. at 1-2. Less than six months after filing an Amended Complaint, plaintiff's counsel filed a letter notifying the Court that plaintiff Ramon Galeas had died. See Letter Notice (Mar. 31, 2020) ("Suggestion of Death"), DE #42. Upon reviewing the letter, this Court, citing Rule 25 of the FRCP, ordered that a motion for substitution of a new plaintiff be filed by June 29, 2020 if the claims were to be pursued. See Electronic Order (Apr. 1, 2020).

Thereafter, faced with various obstacles due in part to delays caused by the global pandemic, the Court granted a series of extensions of the deadline to file a motion for substitution. See Consent Motion for Extension of Time to File (Apr. 10, 2020) ("4/10/20 Mot."), DE #49; Electronic Order (Apr. 10, 2020); Letter Motion for Extension of Time to File (Sept. 25, 2020) ("9/25/20 Mot."), DE #50 (citing delays in appointing an estate administrator caused partly by the COVID-19 pandemic); Virgo's Response in Opposition to Letter Motion for Extension (Sept. 29, 2020), DE #51 (requesting dismissal and arguing that Mr. Villalba failed to

---

[1] Due to an error in the numbering of paragraphs in the original Complaint, this opinion cites to the page numbers therein.

justify the delay in probate proceedings); Houslanger Defendants' Response in Opposition to Letter Motion for Extension of Time (Sept. 29, 2020), DE #52 (claiming that plaintiff's counsel had not shown "good cause" for expanding the filing period and that the case had devolved into "lawyer driven litigation"); Order (Sept. 30, 2020) (finding good cause to extend deadline for motion for substitution); Motion for Extension of Time to File (Dec. 23, 2020) ("12/23/20 Mot."), DE #54 (plaintiff's counsel details efforts to expedite appointment of an administrator and describes pandemic-related delays in state court). The motion deadline was ultimately extended until March 26, 2021. See Order (Dec. 30, 2020) ("12/30/20 Order").

On March 2, 2021, plaintiff's counsel docketed the pending motion to substitute Mr. Villalba for Mr. Galeas, arguing that the motion was timely, that the claims survive Mr. Galeas's death, and that Mr. Villalba is a proper substitute plaintiff. See Substitution Mot; Memorandum in Support of Substitution Motion (Mar. 2, 2020) ("Pl. Mem."), DE #56. It is undisputed that, as noted in the substitution motion, the Queens County Surrogate's Court appointed, as administrator of Mr. Galeas's estate, the decedent's stepson, Mr. Villalba, see Certificate of Appointment of Administrator ("1/20/21 Villalba Ltd. Admin. Letter"), DE #57-1, who is the guardian of the decedent's son, Daniel Galeas ("Daniel"), a person with developmental disabilities and the sole distributee of the decedent's estate, see Pl. Mem. at 1, 3, 13.

The Virgo and Houslanger defendants separately responded to the substitution motion, advancing overlapping arguments. See Virgo's Mem.; Houslanger Opp. Defendants contend that, as Mr. Galeas died before verifying the complaint or testifying at a deposition, the factual allegations in the complaint cannot be established without violating defendants' due process rights. See Virgo Mem. at 2, 4-6. Defendants further argue that Mr. Villalba is not a proper party for substitution because he and Mr. Galeas had a dispute over Daniel's guardianship, and

3

that that disagreement caused the emotional distress alleged in the complaint. See id. at 2, 8. Additionally, according to defendants, if the Estate were substituted for plaintiff, it would not have standing to assert claims for punitive damages. See id. at 10.

In an argument joined by Virgo, see Virgo Opp. at 2, 13, the Houslanger defendants contend that if substitution is granted, the Court should require the posting of a bond, see Houslanger Opp. at 4-5. Plaintiff Galeas previously rejected defendants' joint Rule 68 offer of judgment and, defendants reason, because the Estate has limited assets, a bond is needed to secure the costs that defendants could be awarded in the event that the new plaintiff failed to secure a judgment more favorable than their Rule 68 offer. See id. at 3-5. Defendants also seek a bond to cover the sanctions to which they theorize they will be entitled, to wit, their attorney's fees, based on what they characterize as the bad faith continuation of the case after the decedent's death and his rejection of their offer of judgment. See id. at 3-6.

Following the filing of defendants' opposition memoranda, plaintiff's counsel submitted additional documents in support of the motion for substitution, including a statement from Mr. Villalba regarding his personal knowledge of many of the allegations in the Amended Complaint, along with a reply memorandum rebutting defendants' objections to substitution and demand for a bond. See Declaration of Carlos Villalba (Apr. 15, 2021) ("Villalba Decl."), DE #64; Plaintiff's Reply in Support of Motion to Substitute (Apr. 15, 2021) ("Pl. Reply"), DE #65.

## DISCUSSION

I. **The Motion to Substitute**

   A. **Legal Standards**

If a party dies, and the claim is not extinguished, Rule 25(a)(1) of the FRCP grants courts discretion to "order substitution of a proper party[,]" but requires that the case be dismissed "[i]f

the motion is not made within 90 days after service of a statement noting the death [of the party.]" Fed. R. Civ. P. 25(a)(1).[2] This subsection of the Rule specifies that "any party or . . . the decedent's successor or representative[]" may make a motion for substitution. Id. Thus, pursuant to Rule 25(a)(1), a motion to substitute must: (1) be timely; (2) include claims that survive decedent's death; and (3) propose a proper party as a substitute. See, e.g., Allen ex rel. Allen v. Devine, No. 09-cv-668 (ADS)(ETB), 2011 WL 5117619, at *2 (E.D.N.Y. Oct. 25, 2011). "[T]he Advisory Committee on the 1963 amendments to Fed.R.Civ.P. 25 intended that motions to substitute be freely granted." Natale v. Country Ford Ltd., 287 F.R.D. 135, 137 (E.D.N.Y. 2012) (citing Fed. R. Civ. P. 25, advisory committee's note of 1963); see Saylor v. Bastedo, 623 F.2d 230, 237 (2d Cir. 1980) ("[I]t is difficult to imagine a case where discretion might properly be exercised to deny a motion to substitute for a deceased plaintiff made within [Rule 25's] time limits.").

While the text of the Rule contains no definition of "proper party" for substitution, courts have generally interpreted the "proper party" to be the person who has the legal right and authority to pursue the claims. See English v. Murphy-Lattanzi, No. 12-CV-4179 (JS)(SIL), 2015 WL 630248, at *3 (E.D.N.Y. Feb. 12, 2015) ("A 'proper party' for substitution under Rule 25(a)(1) must be 'either (1) a successor of the deceased party—a distributee of an estate if the estate of the deceased has been distributed at the time the motion for substitution has been made, or (2) a representative of the deceased party—a person lawfully designated by state authority to represent the deceased's estate.'") (quoting Roe v. City of New York, No. 00 Civ.9062 (RWS),

---

[2] Pursuant to Rule 6(b) of the FRCP, courts may extend the window to move for substitution if the request is made within the original 90-day period or a previous extension of that period. See Kernisant v. City of New York, 225 F.R.D. 422, 431 (E.D.N.Y. 2005) (if a request for an extension of time is made prior to the expiration of the period originally prescribed, "the applicable provision governing [ ] motions for extension of time [to seek substitution] is Fed. R. Civ. P. 6(b)(1)[.]").

2003 WL 22715832, at *2 (S.D.N.Y. Nov. 19, 2003)).  State law determines whether a person is a proper "successor" or a "representative" of the deceased party.  See Gusler v. City of Long Beach, No. 10-CV-2077 (PKC)(AKT), 2015 WL 3796328, at *2 (E.D.N.Y. June 18, 2015) (Chen, J.).  As an estate is neither a successor nor a representative of a party, "[it] is not a proper party under Rule 25[.]" Natale, 287 F.R.D. at 137 (quoting J.K. v. Springville-Griffith Inst. Cent. Sch. Dist. Bd. of Educ., No. 02-CV-765S, 2005 WL 711886, at *5 (W.D.N.Y. Mar. 28, 2005)); accord Gusler, 2015 WL 3796328, at *2.

"The determination of which claims shall survive the death of the party is a function of the applicable substantive law and is wholly unaffected by Fed. R. Civ. P. 25(a)." Saylor, 623 F.2d at 238.

**B.    Application**

As an initial matter, the Court must address the identity of the party to be substituted. The notice of motion names the Estate as the party to be substituted for decedent, see Substitution Mot., but all the parties conflate the Estate and Mr. Villalba, see, e.g., Pl. Mem. at 1, 3 (referring to the substitution "via Carlos Villalba"); Pl. Reply at 10 (describing "Mr. Villalba as administrator of Mr. Galeas' Estate [a]s the proper party"); Virgo Opp. at 1, 2, 7, 8 (referring to Mr. Villalba as "Movant" and arguing that Mr. Villalba is an improper party to be substituted); compare Houslanger Opp. at 1 (opposing the motion to substitute the Estate for the decedent) with Houslanger Email Regarding Bond Demand ("2/19/21 Scher Email"), DE #60-1 (reiterating request for a bond as a prerequisite to consenting to Mr. Villalba as a substitute for decedent). As discussed above, an estate is not a "proper party" under Rule 25, see, e.g., Gusler, 2015 WL 3796328, at *2, but, since the defendants' submissions (like those of the movant) refer to Mr. Villalba as the party to be substituted for decedent, see, e.g., Virgo Opp., and treat the Estate and

6

Mr. Villalba interchangeably, see 2/19/21 Scher Email, the Court construes the motion at issue as a request to substitute Mr. Villalba for the decedent in this case.[3]

### 1.     The Motion is Timely

Citing the "protracted discovery that Movant suggests will be needed[,]" Virgo asserts that "[d]efendants would be prejudiced if the substitution is permitted[,]" because the decedent, "the main witness with sole personal knowledge of a majority of the facts[,] is not available." Virgo Opp. at 11 (citing Pl. Mem. at 12).  According to defendants, because there has been little discovery in this case, and the underlying judgment was obtained fourteen years ago, this case is distinguishable from others in which courts within the Second Circuit have allowed substitution despite substantial delays.  See id. at 11-12.

In Kernisant, which defendants attempt to differentiate, the court had granted several timely requests to extend the deadline to move to substitute, and the movant was found not to have acted in bad faith in waiting to file the substitution motion until after the estate's administrator was appointed.  See Kernisant, 225 F.R.D. at 431-32.  Regarding the harm to the defendants resulting from the delay, the court opined:

> Defendants suffered little or no prejudice as a result of the unavoidable delay in obtaining the appointment of an administrator.  Although defendants argue that they are prejudiced because the delays in this case have caused witnesses to become unavailable for deposition and trial and to lose their memories, this is more a consequence of the fact that the case has been on the Court's docket since 1998[.] . . . Moreover, to the extent that the delay in this case due to plaintiff's death caused prejudice, it is prejudice felt by all parties equally.

Id. at 432.

Here, as in Kernisant, considering that the underlying state judgment at issue in this case was entered in 2007, the unavoidable delay in obtaining the appointment of an administrator

---

[3] Notably, no party even raised this issue in its submissions.

7

during a global pandemic was comparatively minimal. Plaintiff's counsel notified the Court of Mr. Galeas's death the day after learning of his passing, see, e.g., Suggestion of Death, and then timely sought and secured extensions of the substitution deadline, see, e.g., 4/10/20 Mot. (consent motion sought extension of deadline to move for substitution after the Surrogate's Court and Probate Court appointed a representative for the intestate decedent); 9/25/20 Mot. (as no administrator of the decedent's estate had been appointed, requesting an extension of the filing deadline and describing support provided to Mr. Villalba to expedite the appointment process); 12/23/20 Mot. (applying to extend the filing deadline because no administrator had been appointed and reporting progress towards appointing an administrator of the Estate). Once an administrator of the Estate was appointed by the Surrogate on January 20, 2021, no further extensions were requested and the substitution motion was timely filed. See 1/20/21 Villalba Ltd. Admin. Letter.

    Defendants vainly attempt to distinguish Kernisant based on the lack of discovery in the instant litigation. But in fact, in permitting substitution more than 13 months after the plaintiff's death, the court in Kernisant noted that there (as here), no significant effort had been made to conduct depositions or otherwise proceed with discovery while the witnesses were available. See Kernisant, 225 F.R.D. at 432 & n.17. To the extent that defendants herein claim to be prejudiced because of stale discovery, see Virgo Opp. at 12, it is not plaintiff's death but the tolling of the statute of limitations that accounts for the vast majority of the time that has passed since the acts at issue in this case, and any resulting prejudice inures to all parties.

    As noted above, each motion for extension of the time to file the substitution motion was submitted within the enlarged period, and the Court granted every motion. See Kernisant, 225 F.R.D. at 431-32 (substitution motion was timely where plaintiff's counsel requested

enlargement of the period to submit the motion before it expired and submitted the motion prior to the extended deadline); see also Staggers v. Otto Gerdau Co., 359 F.2d 292, 296 (2d Cir. 1966) (the framers of the amendments to Rule 25 assumed that "discretionary extensions would be liberally granted").  Accordingly, the March 2, 2021 motion for substitution was timely filed. See Roe, 2003 WL 22715832, at *1 (substitution motion filed prior to judicially extended filing deadline was held to be timely).

### 2. Whether the Underlying Claims Survive Plaintiff's Death

Defendants argue that Mr. Villalba does not have standing to assert many of the claims in the Amended Complaint.  See Virgo Opp. at 9-10.  These arguments are potentially fully or partially dispositive of this litigation,[4] and, before Mr. Galeas's demise, defendants sought leave to file motions to dismiss that are pending before the District Court but were stayed pending the filing and resolution of a motion for substitution, see Virgo Motion to Dismiss (Apr. 1, 2020), DE #43; Houslanger Motion to Dismiss (Apr. 1, 2020), DE #44; in these circumstances, this Court defers to the District Court on those challenges to substitution that may be dispositive of this action.

### 3. The Proposed Substitute is a Proper Party

Rule 25, like all other Federal Rules of Civil Procedure, is procedural and requires only that a "proper party" be substituted.  Caselaw has interpreted "proper" to mean "legal representative," and defendants neither dispute that Mr. Villalba is a legal representative of the decedent's Estate nor do they posit a more appropriate substitute for Mr. Galeas.  Nonetheless, in an argument devoid of citation to caselaw or other authority, defendants counter that, for two

---

[4] For example, without citing any relevant authority, and without having deposed Mr. Villalba to test his knowledge of the facts alleged in the Amended Complaint, defendants argue that the elements of the claims cannot plausibly be alleged without the decedent's testimony.  See Virgo Opp. at 4-7; but see Villalba Decl.

9

reasons, Mr. Villalba is not a proper party for substitution. First, according to defendants, Mr. Galeas "has not and cannot provide a proper factual basis for the assertions made upon the decease[d] Plaintiff's personal knowledge" and that allowing his substitution would thus "violate Defendants' due process rights." Virgo Opp. at 1-2. Second, referencing a previous dispute between decedent and Mr. Villalba about guardianship of the latter's son Daniel, defendants contend that there is an inherent conflict between the decedent and proposed substitute, and that Mr. Villalba "cannot adequately represent the interest of the deceased especially with regard to any alleged emotional distress. . . ." Id. at 2.

To grant this motion for substitution would not violate defendants' due process rights. The inquiry into whether a pleading's claims are plausibly alleged is the essence of a motion to dismiss, and, as noted earlier, see supra p. 9 & n.4, defendants have such motions pending before the District Court; they have not, however, tested the movant's plan to marshal evidence from sources other than the decedent to plausibly prove the claims, see Villalba Decl.; Pl. Reply at 7-9. Defendants fail to show that Mr. Galeas's death will prejudicially impact them more than the substitute plaintiff.

Regarding the dispute in 2014 between Messrs. Galeas and Villalba, defendants again point to no statutory text or caselaw in claiming that, on this basis, Mr. Villalba should be disqualified, nor has the Court uncovered any such authority in its own research. Defendants have made no showing as to how any tension that may have existed in the past between Mr. Villalba and Mr. Galeas would prejudice defendants' interests. The New York Surrogate's Court recently determined that Mr. Villalba's interests were sufficiently aligned with Mr. Galeas's wishes to appoint him as a limited administrator of the Estate.[5]

---

[5] The fact that the state decree restricts Mr. Villalba from "compromising any cause of action" without the authorization of the Surrogate, see 1/20/21 Villalba Ltd. Admin. Letter, suggests that the state court was cognizant

Applying novel requirements to Rule 25 substitution subverts the purpose of the Rule and is not necessary to ensure fairness for defendants. See Saylor, 623 F.2d at 237 (a timely motion to substitute a plaintiff should rarely be denied, as the FRCP's other safeguards of defendants' rights against undue delay "do not merit further enlargement on the fortuitous death of a plaintiff . . . ."). To avoid undermining the purpose of Rule 25, this Court declines to recommend denial of substitution.

## II.   Conditioning Substitution on the Posting of a Bond

Defendants argue in the alternative that, if the motion for substitution is granted, the Court should, pursuant to Local Civil Rule 54.2, require that the substitute plaintiff, which has limited financial resources, post a $25,000 bond; defendants claim that because plaintiff rejected their Rule 68 of the FRCP offer of judgment, they have a "very real" possibility of entitlement to costs under Rule 68,[6] as well as attorney's fee sanctions under 15 U.S.C. § 1692k(a)(3) and the Court's inherent power. See, e.g., Houslanger Opp. at 4-5; Virgo Opp. at 13.

Under Local Civil Rule 54.2, the Court has discretion as to whether or not to require a party to file an original bond for costs. E.D.N.Y. Local Civ. R. 54.2.[7] Generally, courts consider

---

that the administrator of the Estate might pursue a cause of action on the decedent's behalf, cf. Lai Yoong Low v. Tian Yu Inc., No. 12 Civ. 7237(HBP), 2015 WL 1011699, at *4 (S.D.N.Y. Mar. 9, 2015).

[6] Whether attorney's fees are considered an element of "costs" under Rule 68 is defined by the statute or contract underlying the claim. "[A]bsent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68." Marek v. Chesny, 473 U.S. 1, 9 (1985). The text of the FDCPA, the only federal statute invoked in the pleading, separates attorney's fees from costs. See Van Echaute v. Law Office of Thomas Landis, Esq., Civil Case No. 6:09-CV-1071 (NAM/GHL), 2011 WL 1302195, at *2–3 (N.D.N.Y. Mar. 31, 2011) (statutory construction of the FDCPA distinguishes costs from attorney's fees). Therefore, in an FDCPA case in which a claimant obtains a judgment not more favorable than a rejected Rule 68 offer, the Rule 68 offeror is not entitled to attorney's fees. See, e.g., Shepherd v. Law Offices of Cohen & Slamowitz, LLP, 668 F.Supp.2d 579, 583 (S.D.N.Y. 2009) (FDCPA plaintiff would not be liable for attorney's fees if she obtained a judgment less favorable than defendant's Rule 68 offer of judgment).

[7] Local Civil Rule 54.2 provides, in pertinent part: "The court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate."

11

several factors in determining whether a bond should be posted, including "(1) the non-movant's financial condition and ability to pay; (2) whether the party is a non-resident or foreign corporation; (3) the merits of the action; (4) the extent and scope of discovery; (5) the expected legal costs incurred; and (6) the non-movant's compliance with prior court orders." N'Jai v. N.Y. State Higher Educ. Servs. Corp., 214 F.R.D. 251, 352 (E.D.N.Y. 2003) (citing Selletti v. Carey, 173 F.R.D. 96, 100–01 (S.D.N.Y. 1997) ("Selletti I"), rev'd in part, 173 F.3d 104 (2d Cir. 1999) ("Selletti II")). "Each factor does not need to be considered in every case." Rice v. Musee Lingerie, LLC, 18-CV-9130 (AJN), 2019 WL 2865210, at *1 (S.D.N.Y. July 3, 2019) (collecting cases), reconsideration denied, 2019 WL 6619491 (S.D.N.Y. Dec. 5, 2019). The Second Circuit has further cautioned that this security requirement should not be used to exclude all but rich litigants. See Selletti II, 173 F.3d at 111 ("[A]lthough the deterrent created by cost and fee-shifting provisions . . . is diluted by the inability of a plaintiff to pay, the imposition of a security requirement may not be used as a means to dismiss suits of questionable merit filed by plaintiffs with few resources.")[8]; see also Minchala v. Terex Corp., No. 04-CV-3080 (NG) (RLM), 2006 WL 8439743, at *1 (E.D.N.Y. Sept. 19, 2006) (declining to impose a security bond requirement on a plaintiff with "extremely limited financial means").

These considerations weigh against defendants' request in this case. The primary purpose of the bond requirement is to insure that "whatever assets a party *does* possess will not have been dissipated or otherwise have become unreachable" in the event that such party is thereafter found liable for an award. See Selletti II, 173 F.3d at 112. Here, the New York-based

---

[8] Defendants rely on the district court's decision in Selletti I in suggesting that a plaintiff with limited resources should be required to post a bond to ensure payment. See Houslanger Opp. at 4-5. Defendants ignore the fact that on appeal, the Second Circuit in Selletti II reversed in part the lower court's decision, on the ground that in imposing a bond requirement on the plaintiff under Local Civil Rule 54.2, the district court abused its discretion "by giving inadequate consideration to plaintiff's inability to pay [for a bond]." Selletti II, 173 F.3d at 113.

12

Estate and its administrator have few - if any - assets; defendants seek a bond to insure collection, not to freeze assets before the conclusion of this case. See Houslanger Opp. at 4-6. Very little discovery has occurred and defendants fail to describe what discovery costs they anticipate incurring; because of the evidentiary hurdles attendant in a case in which a plaintiff dies during the course of litigation, discovery is likely to be more limited than it would have been if Mr. Galeas were alive. See Virgo Opp. at 11 (arguing that, in discovery postdating Mr. Galeas's death, defendants will not be able "to obtain information necessary for their respective defenses because those facts were solely in the deceased Plaintiff's possession").

Defendants argue that their entitlement to recover from the substitute plaintiff at the conclusion of this litigation is "very real." Houslanger Opp. at 5. However, unlike several of the cases on which they rely, regardless of the outcome of this case, they will not be awarded attorney's fees under Rule 68. Compare Sadowski v. Ziff Davis, LLC, 20cv2244 (DLC), 2020 WL 3397714, at *3 (S.D.N.Y. June 19, 2020) (statutory provision allowing for discretionary award of attorney's fees to prevailing party, including defendant, in copyright action), with Shepherd, 668 F.Supp.2d at 583 (in FDCPA cases, Rule 68 offerors not entitled to attorney's fees); see also *supra* p. 11 n.6.

Seeking to circumvent this limitation under Rule 68, defendants argue that the "continued prosecution of this case — after rejecting an Offer of Judgment . . . — is in bad faith[,]" see Houslanger Opp. at 4, and that defendants thus will be entitled to attorney's fees under the FDCPA's prohibition against bad faith, 15 U.S.C. § 1692k(a)(3), and/or the Court's inherent power to sanction misconduct, see Houslanger Opp. at 5. As an initial matter, defendants have not yet moved for sanctions, nor did they demand the posting of a bond by Mr. Galeas in connection with their pending motion to dismiss. Second, to prevail under section 1692k(a)(3)

of the FDCPA, "'[defendant] must show that [plaintiff's] entire lawsuit . . . was brought in bad faith and to harass [defendant].'" Clayson v. Rubin & Rothman, LLC, 751 F.Supp.2d 491, 497 (W.D.N.Y. 2010) (quoting Horkey v. J.V.D.B. & Assocs., Inc., 333 F.3d 769, 775 (7th Cir. 2003)). Defendants do not argue that the entire lawsuit was brought in bad faith, but instead contend that the continued prosecution of the case, following a rejected Rule 68 offer, is in bad faith; in other words, defendants are improperly seeking to expand their potential remedy under Rule 68 and have not sufficiently articulated a legally cognizable basis for recovery of fees under section 1692k(a)(3).[9]

Nor have defendants shown that they would likely prevail on a motion for sanctions under the Court's inherent power. Though the cost-shifting mechanism in Rule 68 serves as a deterrent against a party's overly optimistic valuation of its claims, the Rule does not require that litigants settle. Plaintiff's rejection of an offer that defendants believe exceeds what the substitute plaintiff can reasonably expect to recover more likely reflects a different estimation of the value of the case than sanctionable behavior; absent a showing of vexatious conduct, the continued prosecution of this lawsuit is not, in and of itself, evidence of bad intent.

The continued litigation of this lawsuit is readily distinguishable from the facts in decisions in which courts have imposed a bond requirement to address the improper behavior of litigants. For example, in Bressler v. Liebman, No. 96 CIV. 9310(LAP), 1997 WL 466553, at *1, 6-9 (S.D.N.Y. Aug. 14, 1997), the only case cited by defendants not involving a statute with

---

[9] Defendants unpersuasively suggest that the appointment of an administrator of the Estate for the purpose of collecting on these claims reflects bad faith. See Houslanger Opp. at 4. To be awarded FDCPA sanctions for bad faith, "'defendant must provide evidence of the plaintiff's bad faith (as opposed to counsel's bad faith)." Cohen v. Potenza, No. 15-CV-3825 (SJF)(AYS), 2016 WL 6581233, at *10 (E.D.N.Y. Nov. 3, 2016) (alterations omitted) (quoting Puglisi v. Debt Recovery Sols., LLC, 822 F.Supp.2d 218, 233 (E.D.N.Y. 2011)). As plaintiff died prior to providing any testimony or a deposition in this case, it is unlikely that defendants will be able to show that the appointment of an administrator to his Estate demonstrates Mr. Galeas's bad faith in bringing this lawsuit.

potential fee-shifting against the plaintiff, a lawsuit brought by a lawyer-litigant who sued defendants both in state and federal court was characterized by the district court as "vexatious[ ]" and riddled with "numerous infirmities"; the court directed that he post a bond for attorney's fees as a sanction under 28 U.S.C. § 1927 and Rule 11 of the FRCP. And in Sadowski, the court cited the prolific filing of lawsuits by plaintiff's counsel, Richard Liebowitz --"over 2,500 cases in the last four years"-- coupled with his history of having been sanctioned for frequent acts of misconduct, as factors that "weigh[ed] in favor of imposing a bond." Sadowski, 2020 WL 3397714, at *4. Defendants herein do not allege that plaintiff, Mr. Villalba, or plaintiff's counsel have engaged in comparable vexatious behavior.

As plaintiff's counsel describes Mr. Villalba as a "low-income" person, and the lawsuit is the Estate's only asset, it is unlikely that the Estate or its representative would be able to afford a $25,000 bond or pay costs levied against them. However, precisely because of the substitute plaintiff's limited financial means, imposing a bond requirement would be the functional equivalent of granting a motion to dismiss before the District Court has even had an opportunity to decide defendants' Rule 12 motions. "[A] party's inability to pay [for security] must weigh heavily against a dismissal for failure to do so." Selletti II, 173 F.3d at 112. This Court is not inclined to "'mak[e] the federal court a court only for rich litigants[.]'" Id. at 113 (quoting Farmer v. Arabian Am. Oil Co., 285 F.2d 720, 722 (2d Cir. 1960)). Therefore, having considered the various factors, this Court declines to recommend the posting of a bond in this action.

15

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the motion for substitution be granted and that defendants' Local Civil Rule 54.2 application for an order directing the posting of security for costs and attorney's fees be denied.

The substitute plaintiff is directed to file, by July 6, 2021, the papers that plaintiff's counsel prepared and served in opposition to defendants['] previously docketed motions to dismiss but that, in accordance with the District Court's "bundling rule," had not yet been docketed when the original plaintiff died. See Letter re: Inability to file previously served Opposition to Defendants' Motions to Dismiss (Apr. 2, 2020), DE #47. All parties are directed to file, by July 6, 2021, submissions that supplement their respective Rule 12 filings to address whether Mr. Galeas's death extinguished any of the claims in the Amended Complaint.

Any objections to the recommendations contained herein must be filed with Judge Pamela K. Chen on or before July 6, 2021. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**SO ORDERED**

Dated:   Brooklyn, New York
         June 21, 2021

/s/ *Roanne L. Mann*
**ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE**